# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | |
|---|---|
| TIFFINEY JONES, | ) CASE NO. 1:24-CV-00619 |
| | ) |
| Plaintiff, | ) JUDGE CHARLES ESQUE FLEMING |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) REUBEN J. SHEPERD |
| DICK'S SPORTING GOODS, INC., AND | ) |
| SCHINDLER ELEVATOR CORPORATION; | ) **REPORT AND RECOMMENDATION ON** |
| | ) **PLAINTIFF'S MOTION FOR** |
| | ) **SANCTIONS** |
| Defendants, | ) |
| | ) |

## I.     Introduction

Before the Court is Plaintiff Tiffiney Jones' ("Jones") Motion for Sanctions, filed on June 6, 2025. (ECF Doc. 51). The initial referral on November 22, 2024 was to resolve the parties' respective Motions to Compel Discovery. (Non-document entry of Nov. 22, 2024; *see also* ECF Docs. 18, 20). Judge Fleming later expanded the referral to me for general pretrial supervision and resolution of non-dispositive motions. (ECF Doc. 32). Jones' earlier Motion to Compel forms the basis for her current Motion for Sanctions, which I now consider.

1

## II.     Factual Context[1]

On April 15, 2022, Jones visited a Defendant Dick's Sporting Goods, Inc. ("DSG") store in Lyndhurst Ohio. (*See* Compl., ECF Doc. 1-1, ¶ 1). Jones claims that during this visit, she walked up a non-operational escalator and cut her toe on a protruding wire. (*Id.* at ¶¶ 1, 13-14). Jones was taken to an office where DSG manager Michael Lengyel ("Lengyel") gave her bandages and alcohol wipes. (Lengyel Depo., ECF Doc. 18-2, pp. 7, 10-11). Lengyel then went to the escalator with Jones' companion, who pointed out the escalator step where Jones was injured. (*Id.*). Lengyel took a photo of the step "immediately," and took other pictures of the escalator "the same day." (*Id.* at pp. 10, 12). While Jones was still in the store, Lengyel began filling out an incident report. (*Id.* at p. 11). He testified that DSG has a dedicated Claims Department and incident reporting process in which a report is to be completed immediately after the incident, and that a claims representative will reach out within 72 hours. (ECF Doc. 55-2, pp. 2-3 (partial duplicate containing other portions of Lengyel Depo.)). When Lengyel completes an incident report, he takes pictures using his personal device, sends those pictures to his Microsoft Teams email, and then uploads the photos into the internal incident reporting website. (*Id.* at p. 3). The claims representative completed the incident report on April 27, 2022. (*See* Rose Decl., ECF Doc. 25-8, p. 2).

## III.     Brief Procedural History

Now begins the controversy. Lengyel was deposed on October 30, 2024. (ECF Doc. 55-2, p. 1). During his deposition, Jones' counsel questioned whether Lengyel still had digital copies

---

[1] There is no set of agreed-upon facts at this stage of the litigation. I provide the following merely to give context for purposes of determining my recommendation on the motion before me and make no binding factual findings. *See Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 808 (N.D. Ohio 2024) (describing the court's consideration of factual evidence only for purposes of deciding the motion for sanctions).

of the escalator photos showing a timestamp of when they were taken. (*Id.* at p. 10). Lengyel no longer had the photos in the original format with a timestamp. (*Id.*). He knew he took the photos the same day but was unsure of the time he took the individual pictures. (*Id.*).

At the time of the deposition, counsel for Defendants had produced to Jones' counsel five photos, but only in PDF format. (*See* ECF Docs. 18-3, 18-4, 18-5, 18-6, 18-7, 18-8). Based on the questions raised during Lengyel's deposition, Jones' counsel requested defense counsel produce the photos in their native format. On November 4, 2024, defense counsel shared that Lengyel could not find the original photos. (ECF Doc. 18-10). Nonetheless, counsel was able to obtain the native images and produced them to Jones on November 8, 2024. (ECF Doc. 18-11). The metadata on the native photos disclosed that three of the photos were taken on April 15, 2022, and two were taken on April 27, 2022. (ECF Doc. 18-12). The two later-dated photos depict the condition of the escalator and the step where Jones was injured. (ECF Doc. 18-1, pp. 5-6 (chart depicting images and timestamps)). In response to Jones' counsel's request to again produce the photos Lengyel testified to taking on April 15, 2022, and not later-dated, defense counsel responded on November 11, 2024 "[w]e have also confirmed with [Lengyel] that the only photos he took were the photos that we already produced and that there are no additional photos that he took." (ECF Doc. 18-14).

On November 11, 2024, three days after the close of fact discovery, both parties filed respective notices to the Court of their discovery disputes. (ECF Docs. 14, 15). On November 22, 2024, Jones filed a Motion to Compel Discovery (ECF Doc. 18); Defendants DSG and Schindler Elevator Corporation (collectively, "Defendants") responded with their own Motion to Compel Discovery, *or in the alternative*, Motion to Determine Sufficiency of Requests for Admission

(ECF Doc. 20).[2] At its center, Jones' Motion to Compel Discovery sought to resolve a discrepancy in the dates found in the metadata for the five photographs that Defendant DSG's manager Michael Lengyel testified were taken on April 15, 2022. (ECF Doc. 18).

With respect to the discrepancy in the native photo metadata, I granted Jones' Motion to Compel Discovery and ordered the parties, at Defendants' expense, to obtain a neutral forensic expert to investigate Defendants' electronic data and obtain original photographs of the escalator dated April 15, 2022, if any were available, or otherwise produce a report detailing the reasons for their absence. (ECF Doc. 26, pp. 2-3). Should that prove insufficient, I permitted Jones to seek additional remedies by motion. (*Id.* at p. 3).

The parties obtained a neutral forensic expert, ArcherHall, who produced a report on April 11, 2025 detailing its findings. (ECF Doc. 53, duplicated at ECF Doc. 56-1). ArcherHall examined DSG email accounts, network share, and claims system, as well as Lengyel's personal Gmail account. (*Id.* at pp. 3-4). ArcherHall did not inspect physical devices; Lengyel's cell phone used to take the pictures was lost on a golf course in August 2023 (Lengyel Decl., ECF Doc. 55-4, ¶ 8) and the DSG workstation computer was replaced during a periodic upgrade (ECF Doc. 55, p. 7). The ArcherHall report found only one additional photo that had not been produced – a photo depicting the top of the escalator, attached to an inbound email from Lengyel's personal email to the DSG store email account sent on April 27, 2022. (ECF Doc. 53, pp. 6, 8). The photo was taken on April 15, 2022, and was taken after the two photos of Jones' foot, but before the picture of the hole in Jones' sock. (*Id.* at p. 6). With respect to the two photos dated April 27, 2022, the ArcherHall report states "[e]ach instance of these two other photos were confirmed to

---

[2] Upon review, I determined Jones had followed applicable Rules of Civil Procedure and denied with prejudice Defendants' notice of discovery dispute (ECF Doc. 14) and related motions (ECF Docs. 19, 20). (*See* ECF Doc. 26, p. 2).

be the exact same in all locations based on their forensic hash, including the values and dates/times reflected in their internal metadata." (*Id.*). The forensic expert was unable to locate any photos depicting the condition of the subject escalator step at the time of Jones' injury. (*See* ECF Docs. 53, 56-1).

With this motion, Jones returns to the Court for remedy. I permitted the parties' briefing on Jones' Motion for Sanctions (ECF Docs. 50, 51, 55, 56) and conducted a hearing on July 7, 2025 (non-document entry of July 7, 2025).

During the July 7 hearing, counsel for DSG indicated they had received the incident report from DSG claims representative, Ms. Rose. Counsel stated they were unaware when they received the claims package containing the incident report and photos that the photos had any discrepancy in dates. Once Jones' counsel requested the native images, DSG counsel obtained them from their clients and turned the native images over within approximately five business days. At that time, DSG counsel became aware that the photo metadata showed three photos had been taken on April 15 and two on April 27, and began questioning the reason for the discrepancy in dates. In DSG's written briefings on the issue, it has maintained that there may be an error in the metadata and that all photos were taken on April 15 in accordance with Lengyel's deposition. However, during the hearing, DSG counsel conceded that the forensic report does not show any error in the metadata for the photos, and that the two photos in question were taken on April 27, 2022.

I now proceed to consider whether additional sanctions are necessary.

## IV.    Legal Standard[3]

Parties and their attorneys are obligated to comply with the discovery rules set forth in the Federal Rules of Civil Procedure; where they do not, a court may impose sanctions either by operation of the Rules or by its inherent authority. *See, e.g., Laukus v. Rio Brands, Inc*., 292 F.R.D. 485, 500-03 (N.D. Ohio 2013) (collecting cases and describing consideration of sanctions under various Rules and inherent authority). A federal court may exercise its inherent power to sanction where it determines that a party or its attorney has acted in bad faith or for oppressive reasons, has practiced a fraud on the court, or has delayed, disrupted the litigation, or hampered the enforcement of a court order. *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46 (1991) (collecting cases). This is so because courts must "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

With respect to spoliation of evidence, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Clark Constr. Group, Inc*., 229 F.R.D. 131, 136 (W.D. Tenn., 2005) (internal quotation and marks omitted); *see also*, *e.g.*, *Crown Battery Mfg. Co. v. Club Car, Inc*., 185 F. Supp. 3d 987, 994 (N.D. Ohio 2016) (same). To obtain heightened sanctions for spoliated evidence, the Sixth Circuit states:

> A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

---

[3] Federal courts within the Sixth Circuit apply federal law when considering spoliation sanctions. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009)

*Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010), quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). For purposes of proving spoliation, a party seeking sanctions "may rely on circumstantial evidence to suggest the contents of destroyed evidence." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 514 (6th Cir. 2014); *see also Beaven*, 622 F.3d at 555.

But even though adverse inference instructions may be available, a court has "broad discretion to craft proper sanctions for the spoliation of evidence." *Adkins v. Wolever*, 692 F.3d 499, 503 (6th Cir. 2012).

### A.      Preservation of Electronically Stored Information

Federal Rule of Civil Procedure 37(e) provides the applicable standards for preserving electronically stored information ("ESI"), and any sanctions that might result from the failure to preserve information that should have been preserved but was not. Fed. R. Civ. P. 37(e). It states:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > **(B)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Rule 37(e) thus applies to "electronically stored information that should have been preserved in the anticipation or conduct of litigation." *Id*. And the Rule permits a court

to remedy the loss of ESI where "a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Id.*

Sufficiently reasonable steps to preserve does not require redundancy and may include using available resources such as cloud-based storage rather than physical retention. *See generally Automated Sols. Corp.*, 756 F.3d at 515 (finding that redundant back-up tapes were not subject to a duty to preserve evidence after the original hard drives failed). And "[r]easonable steps to preserve do not require perfection." *Buddenberg*, 711 F. Supp. 3d at 817 citing to Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment.

When considering remedy or sanctions under Rule 37, a court must weigh the circumstances of the case and judiciously apply appropriate remedy. *Buddenberg*, 711 F. Supp. 3d at 817. Consideration includes whether the lost ESI can be restored or replaced through additional discovery; whether prejudice has resulted from its loss; the importance of the lost ESI in the litigation; and what measures are available to cure any prejudice resulting from the loss. *Id.* Even so, a court should only impose the more severe sanctions under Rule 37(e)(2) where it finds a specific "intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

### B. Attorney Certifications under Rule 26(g)

Federal Rule of Civil Procedure 26(g) concerns an attorney's certification of discovery disclosures. It states in relevant part:

> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > **(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and
> >
> > **(B)** with respect to a discovery request, response, or objection, it is:

> **(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> **(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> **(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1). It continues:

> **(3) *Sanction for Improper Certification.*** If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

The Federal Rules impose a duty of good faith and reasonable inquiry on all attorneys involved in litigation, as officers of the Court. *Laukus,* 292 F.R.D. at 509. "The attorney's signature 'certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.'" *Id.* at 502 (quoting Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment)). Moreover,

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection.

*Id.* This also extends to a party's failure to amend a prior response to discovery under the rules. If a party fails to amend as required by Rule 26, "the court may prevent that party from using that

evidence at trial or at a hearing and impose other appropriate sanctions, including the payment of attorney's fees. *Laukus*, 292 F.R.D. at 582, quoting Fed. R. Civ. P. 37(c)(1).

When considering an attorney's compliance with Rule 26, a court considers the case as a whole and counsel's conduct within it. A court may assess fault against the party who has the ability to comply with a request for discovery but does not. *Id.* at 510 (collecting cases).

Rule 26(g) does not require a specific sanction be imposed. *See* Fed. R. Civ. P. 26(g). Rather, it requires a court impose "an appropriate sanction," but does not specify which might be required. *Chambers*, 501 U.S. at 43. A court may therefore rely on its inherent authority to sanction without thwarting Rule 26(g)'s terms. *Id.* at 43, 51.

## V.      Motion for Sanctions

Jones again moves this Court to impose sanctions against DSG under Federal Rules of Civil Procedure 26(g), 37(b)(2), and 37(e) for failing to preserve contemporaneous photos depicting the subject escalator taken on April 15, 2022. (ECF Doc. 51-1, p. 1). Jones' motion arises from DSG's alleged spoliation of that photographic evidence and what Jones alleges are misrepresentations about the existence, timing, and authenticity of the evidence; and its failure to preserve the devices used to capture and store the photos. (*Id.* at pp. 12-14). Jones takes issue with DSG's changing responses regarding the dates of the photos, its failure to preserve Lengyel's phone, and reliance on the later-dated photos as contemporaneous, and argues these inconsistencies demonstrate an intent to deprive her of the original photos. (*Id.* at pp. 13-15). Jones also is troubled that the post-dated photos were used throughout the case as if they were contemporaneous. (*Id.* at p. 14).

DSG maintains that the contemporaneous photos do not exist, and that, because the forensic report did not recover the photos of the step and escalator, there is no evidence[4] that the photos were lost or destroyed. (ECF Doc. 55, p. 11). DSG also maintains that it took reasonable steps under Rule 37 to preserve the photo evidence via cloud-based storage, even though Lengyel's personal phone was lost and the computers used to store the data were discarded in a routine upgrade. (*Id.* at pp. 12-13). Therefore, DSG states, Jones cannot prove prejudice from the loss of the photos because there is no evidence they existed in the first place, and Jones cannot prove there was any intentional loss or destruction of ESI under Rule 37(e). (ECF Doc. 55, pp. 14-15).

A.      **Rule 37(e) Sanctions[5]**

Jones contends that DSG "lost or destroyed the cell phone and desktop computers" (ECF Doc. 51-1, p. 1) that may have contained the contemporaneous photographs, and that it did so with intent to deprive her of their use in litigation (*Id.* at pp. 10-12).

I find the evidence does not go so far. I previously determined that curative measures were necessary under Rule 37(e)(1) and ordered a forensic examination, at DSG's cost, to determine if the photos exist or uncover answers as to why they may have been lost. (ECF Doc. 26). That forensic report did not uncover those photos, nor did it find evidence of their

---

[4] Despite DSG's contentions that "no evidence" exists to support that the contemporaneous photos of the escalator and step existed, my review of Lengyel's deposition reveals that his sworn testimony included five separate statements that he took those photos on April 15, 2022. (*See* Lengyel Depo., ECF Doc. 18-2). Such evidence is sufficient to stand at trial.

[5] Despite Jones also invoking Rule 37(b)(2)(A), I discuss sanctions under Rule 37(e)(2), because Rule 37(e)'s specific discussion of sanctions for a failure to preserve ESI governs this issue. *See Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 817 (N.D. Ohio 2024) ("Rule 37(e) specifically governs a party's failure to preserve electronically stored information. This specific rule governs the analysis, not the more general provisions in other parts of Rule 37, because it regulates the particular circumstances at issue.").

intentional destruction. (ECF Doc. 53, duplicated at ECF Doc. 56-1). As I discuss in more detail below, I determine this does not meet the intent requirements of Rule 37(e)(2).

Federal Rule of Civil Procedure 37(e) states in relevant part:

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

I earlier contemplated the loss of contemporaneous photos under Rule 37(e)(1) and determined that, due to the prejudice resulting from the discrepancy between the dates in the photographs, it was necessary to obtain a neutral forensic expert to investigate and discover whether any April 15, 2022 escalator photos existed. (ECF Doc. 26, pp. 2-3). The forensic expert uncovered one previously-undisclosed photo utilizing the cloud-based means available; but the forensic expert was unable to find the contemporaneous photos of the subject escalator and step contemplated in my earlier order. (ECF Doc. 53, duplicated at ECF Doc. 56-1). The expert report did not disclose any intentional destruction or tampering with the metadata. (*See id*). Having already acted on Rule 37(e)(1) and, with Jones asserting that the result of that order was insufficient, I turn to whether sanctions are necessary under Rule 37(e)(2).

To justify sanctions under Rule 37, Jones has the burden to show that DSG had "intent" to deprive her of the photos. *See* Fed. R. Civ. P. 37(e)(2); *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016). "A showing of negligence or even gross negligence will not do the trick." *Id.* "Rule 37(e)(2) sanctions are available to address the prejudicial effect of lost ESI only if the loss is shown to have been motivated by an intent to deprive another party of the information's use in the litigation." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (internal quotations omitted).

Courts must exercise caution when determining appropriate remedies under Rule 37(e). *Buddenberg*, 711 F. Supp. 3d at 823. Sanctions are to be applied gradually, reserving the harshest of sanctions – adverse jury instructions – only when necessary. *See id.* As a result, "Rule 37(e)(2)'s intent standard is stringent and does not parallel other discovery standards." *Culhane*, 364 F. Supp at 773 (internal quotations and marks omitted). "The more severe sanctions available under Rule 37(e)(2), including an adverse-inference jury instruction, may be imposed only on a finding of specific intent 'to deprive another party of the information's use in the litigation.'" *Buddenberg*, 711 F. Supp. 3d at 817(quoting Fed. R. Civ. P. 37(e)(2).

And it is through this caution and heightened standard for severe sanctions that I reach the conclusion that adverse inference instructions are unavailable under Rule 37(e)(2). Although we have testimony evidence stating that Lengyel took the photos in question on April 15, there is no evidence to show definitively that the loss of those photos was due to any intent to deprive on DSG's part.

Here, DSG has an internal claims process and was therefore sufficiently aware of potential litigation to trigger its duty to preserve evidence. *See* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating that rule requires preservation of evidence when

litigation is reasonably foreseeable). There is no question that photos depicting the site of the

injury at the time it occurred would be relevant to the litigation and should have been preserved.

And, through Lengyel's completion of the claims process, DSG took steps to preserve the

evidence. Nonetheless, contemporaneous photos are unavailable, either through inadvertent loss

or otherwise. As I see it, the requirements for adverse inference under Rule 37(e)(2) are only

partially met. And notably, the deciding factor under both Rule 37(e)(2) and *Beaven* is intent or a

culpable state of mind. I cannot find that DSG's actions, while possibly negligent or even

reckless, rise to that level.

Certainly, contemporaneous photos of the escalator and step should be available in this

litigation. And DSG should have preserved the photos Lengyel testified to taking. Those photos

are now lost and have not been recovered through additional discovery. I also note that DSG's

internal claims process leaves room for human error – it crosses my mind that DSG does not

provide equipment to its employees, but instead relies on their personal devices for preservation

of ESI, and is now pointing to the inadvertent loss of an employee's personal device as reason to

avoid severe sanctions.[6] But human error is not the Rule 37(e)(2) standard. Intent is. And I do not

find that DSG acted with the intent to deprive Jones of the contemporaneous photos, particularly

where I have already imposed significant sanctions against DSG by requiring them to pay for the

services of the forensic expert. I therefore find that an adverse jury instruction is not warranted

under Rule 37(e)(2) and recommend that the District Court not make such instruction.

---

[6] DSG argues that it should not be held responsible for the inadvertent loss of Lengyel's phone
since it was a personal device. But this argument is without merit; where a party representative
uses a personal device to conduct business, that personal device is still subject to Rule 37's ESI
preservation standards. *See, e.g.*, *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D.
Minn. 2019).

B.     **Rule 26(g) Sanctions**

Despite my determination that no additional Rule 37(e) sanctions are necessary beyond what have already been imposed against DSG, I still determine that additional sanctions are necessary to ensure fairness at trial. I do not come to this conclusion lightly. It comes by observation of counsel's conduct and frequent need for the Court's involvement throughout and after the discovery process. Despite being a relatively straightforward case, counsel for both parties have proved obstreperous and unwilling to engage in the discovery process with the openness this Court expects of officers of the Court. (*See, e.g.*, Local R. Civ. P. 37.1, describing sincere, good faith efforts to resolve discovery disputes). The discontent between counsel has encumbered this case and created significant expense and burden on both the parties and the Court.

A federal district court has the "inherent authority to sanction" bad faith conduct, derived from its "equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002), citing *Chambers v. Nasco*, 501 U.S. 32 (1991). In considering the integrity of the proceedings, I also consider the integrity of counsel's disclosures under Federal Rule of Civil Procedure 26(g), in which they certify they have made a "reasonable inquiry" that the disclosures are complete and correct, and that discovery requests or objections are proportional, considering the needs of the case, and will not needlessly increase the cost of litigation. I also note that Rule 26(e) requires counsel to "supplement or correct" its discovery disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Sanctions are available if an attorney's certification violates Rule 26 without substantial justification. Fed. R. Civ. P. 26(g)(3).

A spoliation sanction is not intended to be solely punitive; rather, it should also consider fairness with the "purpose of leveling the evidentiary playing field and sanctioning the improper conduct." *Adkins*, 554 F.3d at 652 (internal quotation and marks omitted). And "[b]ecause failures to produce relevant evidence fall along a continuum of fault— ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53. A district court therefore has broad discretion to impose sanctions for spoliated evidence, including issuing jury instructions that they may infer a fact based on lost or destroyed evidence. *Beaven*, 622 F.3d at 554-55 (collecting cases to describe the range of available sanctions).

This is not the first time I have considered the discovery dispute underlying the present motion, nor is it the first time the Court has been involved in the parties' discovery disputes. Indeed, the parties' conduct throughout the course of this case has been contentious, at times bordering on the frivolous and appearing to be made only for purposes of opposition.

I am particularly troubled by defense counsel's presentation of the photos during the depositions taken in October 2024, and the continued use of those photos as contemporaneous throughout the pendency of the case. Counsel for both sides may have been unaware during the depositions that they were presenting later-dated photos as contemporaneous, and, because of the lack of confirming facts on this matter, I could not conclude there was sanctionable conduct under Rule 37(e). But in the nine months since the discovery of the discrepancy in the photos, defense counsel has not been forthright with opposing counsel or the Court. Without evidence, DSG counsel has continued to argue that the metadata may have been altered despite the forensic report confirming that the metadata for all photos was the same among the various copies. (*E.g.*, ECF Doc. 55, p. 6 (describing its production of native photos and reiterating that "metadata –

like the image date showing on the two photos at issue – can be changed.")). DSG has also presented the Court with a later-made, unsworn declaration from Lengyel stating that he "forgot that [he] had taken additional photos on April 27, 2022" (ECF Doc. 55-4, p. 4) and now uses it to override the sworn statements Lengyel made during his deposition where he recalls taking photos "immediately" after the incident. (*Compare id. with* ECF Docs. 51-2, 55-2). Yet, when I questioned DSG counsel during the July 7 hearing, counsel admitted that they were aware of the discrepancy in dates when they obtained the native photos in November 2024. Counsel also conceded at the hearing that the photos do not show the escalator or step on the date of the incident, and that there is no indication that the April 27 photo represents the step where the injury occurred. Nonetheless, despite providing numerous opportunities – during the discovery period or in the months that followed, or during the multiple calls, hearings, and discovery dispute motions – defense counsel has determined that fighting sanctions motions is better than correcting their disclosures and ensuring clean evidence is presented in the case. The lengths counsel has gone to double down on the veracity of the photos as representative of conditions on April 15, 2022 now leaves in question the fairness of the evidence presented in this case and at trial.[7]

There are no contemporaneous photos to demonstrate the condition of the escalator or step at the time Jones' injury occurred. At present, the deposition testimony and other briefings

---

[7] The briefs on summary judgment are not before me. However, I note that Defendants continue to imply in those filings on June 2, 2025, that the photos are representative of conditions on April 15, 2022. (*See, e.g.* ECF Doc. 43-1 p. 16 ("At around 5:45 p.m. [on April 15, 2022], Crawford showed Lengyel the step that allegedly contained the wire. Lengyel did not observe any wire, any foreign object, or anything that could have injured Jones. He immediately took a photo of the of the escalator with his phone showing that there was no wire or foreign object on the escalator.") (internal citations to the record omitted); *see also* ECF Doc. 44, pp. 15-16 (verbatim)).

assumes that all photos are representative of conditions on April 15, 2022. In the months that this discovery dispute has been brewing, counsel has not acted to resolve the discrepancy between the testimony and the photo evidence, leaving the depositions tainted. The case is now well past the discovery stage and opposing summary judgment motions have been filed. On this basis, I determine that the fairness of the upcoming trial is in question, and recommend the Court now act to remedy.

With the intent to preserve fairness at trial, I recommend that the District Court provide the following instruction:

"During the depositions, the parties testifying were presented five photos of the scene as if they were contemporaneous and all taken on April 15, 2022. The two photos of the subject escalator and step were taken on April 27, 2022, 12 days after the alleged injury was suffered, and do not depict the condition of the escalator or step at the time of the alleged injury. DSG has not produced any contemporaneous photos of the escalator or step in question."

## VI.     Conclusion

I find that DSG did not act with the intent to deprive Jones of the ESI in question, and therefore recommend no adverse jury instructions under Rule 37(e)(2). However, I recommend that, based on attorney conduct during discovery and with the intent to preserve fairness at trial, the District Court provide curative instructions pursuant to Rule 26(g).

Dated: July 22, 2025

Reuben J. Sheperd
United States Magistrate Judge

18

# OBJECTIONS

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).