## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TIFFINEY JONES, | ) | CASE NO. 1:24-cv-619 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| DICK'S SPORTING GOODS, INC., *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court are two cross motions for summary judgment: (i) Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Partial MSJ") (ECF No. 39); and (ii) Defendant Schindler Elevator Corporation's Motion for Summary Judgment and Defendant Dick's Sporting Goods, Inc.'s Motion for Partial Summary Judgment ("Defendants' MSJ") (ECF No. 43). The parties have filed their respective briefs in opposition, (ECF Nos. 44, 58), and replies in support, (ECF Nos. 54, 59). For the reasons discussed below, Plaintiff's Partial MSJ is **DENIED** and Defendants' MSJ is **GRANTED**.

## I.    FACTUAL BACKGROUND

### A.    The Defendants and the Property

Defendant Dick's Sporting Goods, Inc. ("DSG") is a Delaware corporation that operates a retail business on the property located at 24545 Cedar Road, Lyndhurst, Ohio ("Lyndhurst Store"). (ECF No. 1, PageID #3, ¶ 6a; ECF No. 1-1, PageID #11–12, ¶¶ 7–9; ECF No. 5, PageID #31, ¶¶ 7–9). Defendant Schindler Elevator Corporation ("Schindler") is a Delaware corporation that, in part, manufactures escalators and elevators. (ECF No. 1, PageID #2, ¶ 6b; ECF No. 1-1, PageID #12, ¶ 10; ECF No. 5, PageID #31, ¶ 10).

1

**B.      DSG and Schindler's Agreement – Relevant Escalator Maintenance**

On August 1, 2018, DSG and Schindler executed a Master Agreement and Statement of Work ("Master Agreement") whereby Schindler would perform preventive maintenance on escalators and elevators at DSG stores, including the Lyndhurst Store.  (ECF No. 45-1, PageID #1606–07, ¶¶ 5–6; *id.* at PageID #1612–35).   Under the Master Agreement, Schindler was responsible for: (i) providing Schindler's preventive maintenance program in accordance with a maintenance schedule specific to DSG's equipment; (ii) examining, lubricating, adjusting, and repairing/replacing covered components; (iii) prompt callback coverage; (iv) safety testing; and (v) responsive communication.  (*Id.* at PageID #1607, ¶ 8; *id.* at PageID #1628).  Schindler was also required to be present at any state or local inspections of DSG escalators.  (ECF No. 45-1, PageID #1608, ¶ 10).

The Lyndhurst Store has one up escalator and one down escalator.  (ECF No. 43-5, PageID #1335; ECF No. 45-3, PageID #1685, ¶3).   The up escalator was installed in 2003 and is a Schindler 9300 model. (ECF No. 45-3, PageID #1685, ¶3).  Since 2004 or 2005, Keith Janzen, an escalator and elevator technician for Schindler, was responsible for service of the escalators at the Lyndhurst Store.  (*Id.* ¶¶ 2–3).  Mr. Janzen did not recall any unusual issues outside of normal wear and tear on the Lyndhurst store's up escalator and his performing standard preventive maintenance.  (*Id.* ¶ 4).  Schindler's records for the Lyndhurst Store from May 2020 to April 2022 show no reports or incidents involving wires or pieces of metal sticking out of the escalators.  (ECF No. 45-1, PageID #1608, ¶ 11; *id.* at PageID #1672–75).  On April 12, 2022, the Ohio Department of Commerce, Division of Industrial Compliance, performed its annual inspection of the Lyndhurst Store's up escalator in the presence of a Schindler technician; State Inspector Zupancic noted that

the up escalator passed the annual inspection and had no violations.  (ECF No. 43-7, PageID #1352–53, ¶ 4; *id.* at PageID #1354).

### C.    The Incident – April 15, 2022

On April 15, 2022, at around 4:30 p.m., Michael Lengyel (a manager at the Lyndhurst Store) learned that the up escalator had stopped working.  (ECF No. 45-2, PageID #1679, ¶ 10).  Nicholas Bruno, a DSG employee,[1] called Schindler at 4:33 p.m. to report that the up escalator was not working, needed examination, and required potential service.  (*Id.* ¶ 11; ECF No. 45-1, PageID #1608, ¶ 12; *id.* at PageID #1675).

At approximately 5:23 p.m., Plaintiff Tiffney Jones (accompanied by Gale Crawford) entered the Lyndhurst Store with the intent of looking for a Cleveland Cavaliers headband/sweatband.  (ECF No. 16-1, PageID #194, 241; ECF No. 39-2, PageID #1197; ECF No. 47-1, at 1:27–1:47).  For footwear, Plaintiff was wearing slip-on/slide-in sandals with socks.  (ECF No. 16-1, PageID #197–99).  After entering the store, Plaintiff and Ms. Crawford approached the up escalator and noticed it was non-operational and stationary.  (ECF No. 16-1, PageID #203–04; ECF No. 39-2, PageID #1208).  The non-operational up escalator was not barricaded.  (ECF No. 45-2, PageID #1679, ¶ 11).  There was a sign next to the bottom of the up escalator stating: "Elevator Located in Footwear."  (ECF No. 45-2, PageID #1682).[2]  Plaintiff and Ms. Crawford proceeded to climb the stationary up escalator, with Ms. Crawford proceeding first.  (ECF No. 16-1, PageID #203–11; ECF No. 43-9, PageID #1414).

At some point while climbing the up escalator, Plaintiff states that she felt a sharp pain in her big toe and she had stepped on a metal wire in one of the steps which had punctured through

---

[1] In his deposition, Mr. Lengyel refers to Mr. Bruno as the store manager at the Lyndhurst Store.  (ECF No. 17-1, PageID #453, 455, 491).

[2] A forensic analysis determined that this photograph from the top of the escalator and showing the sign was taken April 15, 2022 at 5:45 p.m.  (ECF No. 53, PageID #1799–1800).

her sandal and sock.  (ECF No. 16-1, PageID #211–12, 217, 219).  Plaintiff described the wire as about three inches long and as thick as a cell phone charging cable.  (ECF No. 16-1, PageID #217–19).  Around 5:31 p.m., Mr. Lengyel was notified via radio of the incident—that Plaintiff had walked up the non-moving escalator, ripped her sock, and had an abrasion on her big toe— and he met Plaintiff and Ms. Crawford at the top of the escalator.  (ECF No. 17-1, PageID #499–500, 503; ECF No. 45-2, PageID #1679, ¶ 12).

Mr. Lengyel took Plaintiff to the manager's office on the second floor and provided her with first aid, including bandages, alcohol wipes, anti-septic wipes, and Neosporin.  (ECF No. 16-1, PageID #225–26; ECF No. 17-1, PageID #502, 505–06).  Mr. Lengyel also offered Plaintiff new socks and took photographs showing a torn sock and a wound on the bottom of Plaintiff's right big toe.  (ECF No. 16-1, PageID #227; ECF Nos. 17-14, 17-15, 17-16; ECF No. 39-2, PageID #1203).

### D.    Schinder Technician Arrives

After receiving the earlier call of the non-operational up escalator, Schindler dispatched a technician, Jason Tischler, to the Lyndhurst Store at 4:46 p.m.  (ECF No. 43-10, PageID #1421–22, ¶ 4).  Tischler arrived at the Lyndhurst store at 5:40 p.m.  (*Id.* at PageID #1422, ¶ 5).  After arriving, Tischler learned from a DSG employee that a customer had allegedly injured their toe on the escalator; he began an inspection of the escalator, but he failed to find any piece of metal, a wire, or any other object on or sticking out of the up escalator.  (*Id.* ¶ 6).  Tischler determined that the up escalator had stopped working because its "carriage switch" was sticking.[3]  (*Id.* ¶ 8).  He moved the roller back and forth, reinstalled the carriage switch, cleared the code for an error, ran behind

---

[3]  A carriage switch is a safety component located on the tension frame of the escalator step chains below the escalator walk-on plate,  (ECF No. 43-10, PageID #1422, ¶8).

the barriers, and returned the up escalator to service.  (*Id.*).  Tischler left the Lyndhurst store at 6:45 p.m.  (*Id.* ¶ 9).

### E.      Plaintiff Leaves the Store

Meanwhile, in the second-floor manager's office, Plaintiff was offered and declined immediate medical assistance, stating that she would likely seek medical help after.  (ECF No. 17-1, PageID #506–07).  Mr. Lengyel completed an incident report and gave a copy to Plaintiff.  (*Id.*).  After the report was finished, Mr. Lengyel wheeled Plaintiff to the elevator, Plaintiff got into the elevator with Ms. Crawford, went down to the first floor, and they left at approximately 6:05 p.m. (*Id.* at PageID #508; ECF No. 16-1, PageID #236, 245; ECF No. 47-1, at 43:51–45:12).  Later that evening, after watching a Cleveland Cavaliers game, Plaintiff sought medical care at the Cleveland Clinic - Euclid Hospital emergency room at approximately 11:35 p.m.  (ECF No. 16-1, PageID #256–59; ECF No. 43-9, PageID #1413; ECF No. 43-11).

## II.      PROCEDURAL BACKGROUND

On March 31, 2024, Plaintiff filed a complaint in the Cuyahoga County Court of Common Pleas against Schindler and DSG.  (ECF No. 1-1, PageID #9–18).  The complaint asserts claims of negligence against Defendants based on the alleged injury, and requests punitive damages in addition to compensatory damages.  (*Id.* at PageID #12–18).  On April 5, 2024, Defendants removed this action to the Northern District of Ohio pursuant to 28 U.S.C. §§ 1332 and 1446(a), invoking the Court's diversity jurisdiction.  (ECF No. 1).

On April 2, 2025, Plaintiff's Partial MSJ was filed, which seeks summary judgment solely as to the negligence claims asserted against DSG.  (ECF Nos. 39, 39-1).  Defendants' MSJ was filed on June 2, 2025, wherein they seek summary judgment on: (i) all claims asserted against Schindler; and (ii) only the claim for punitive damages against DSG.  (ECF Nos. 43, 43-1).  The

parties filed timely responses in opposition to the pending motions for summary judgment, (ECF Nos. 44, 58), as well as timely replies in support, (ECF Nos. 54, 59).

On July 22, 2025, Magistrate Judge Reuben Sheperd issued a report and recommendation ("R&R") addressing a discovery dispute and a motion for sanctions (ECF No. 51) regarding missing electronically stored information ("ESI").  (ECF No. 60).  Magistrate Judge Sheperd found that DSG did not act with the intent to deprive Plaintiff of the ESI in question (escalator photos taken on the date of the incident), and recommended curative instructions to the jury at trial pursuant to Rule 26(g).[4]  (*Id.* at PageID #2162–70).  After no party filed an objection, the Court entered an order adopting the R&R and granting Plaintiff's motion for sanctions (ECF No. 51), to the extent that the Court would provide curative instructions about the escalator photos pursuant to Rule 26(g) at trial.  (ECF No. 61).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  The Rule states that a district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006).  A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law."  *Id.*

---

[4] The R&R recommended the following instructions: "During the depositions, the parties testifying were presented five photos of the scene as if they were contemporaneous and all taken on April 15, 2022.  The two photos of the subject escalator and step were taken on April 27, 2022, 12 days after the alleged injury was suffered, and do not depict the condition of the escalator or step at the time of the alleged injury. DSG has not produced any contemporaneous photos of the escalator or step in question."  (ECF No. 60, PageID #2170).

"[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts."  *Taft Broadcasting Co.*, 929 F.3d at 248 (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## IV.  DISCUSSION

### A.  Defendants' Motion for Summary Judgment – Claims against Schindler

Defendants argue that summary judgment should be entered in favor of Schindler as to the negligence claim asserted against it because Plaintiff has provided insufficient evidence to establish that Schindler: (i) knew, or should have known, of any dangerous condition on the up escalator; or (ii) performed any services under the Master Agreement negligently.  (ECF No. 43-1, PageID #1319–21).  Plaintiff responds that circumstantial evidence of there being a wire (photos of the puncture of the sandal and the wound on Plaintiff's toe, along with Plaintiff and Ms. Crawford's testimony) allows a reasonable jury to conclude that Schindler breached its duty to

inspect and maintain the escalator in a reasonably safe condition.  (ECF No. 58-1, PageID #1997–98).  Plaintiff also argues that: (i) DSG's spoliation of photographic evidence of the escalator step from immediately after the incident has compromised her ability to evaluate Schindler's liability; and (ii) granting summary judgment in Schindler's favor would be unfair and prejudicial.  (*Id.* at PageID #1998–2003).  Defendants respond that the presence of a wire is irrelevant to whether Schindler exercised ordinary care and there is no evidence on the record to support that Schindler knew of a dangerous condition.  (ECF No. 59, PageID #2113–15).  They also argue that Plaintiff has provided no evidence to refute the testimony of Defendants' experts who have testified that the wire described by Plaintiff could not be part of the escalator itself and is otherwise impossible.  (*Id.* at PageID #2116).

Under Ohio law, a negligence claim requires a plaintiff to demonstrate: (i) "the existence of a duty"; (ii) "a breach of that duty"; and (iii) "an injury that was proximately caused by the breach."  *Rieger v. Giant Eagle, Inc.*, 157 Ohio St. 3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, 1125 (Ohio 2019).  "The failure to prove any one of these elements is fatal to a claim of negligence, . . ."  *Id.*  "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff."  *Wallace v. Ohio DOC*, 2002-Ohio-4210, 96 Ohio St. 3d 266, 773 N.E.2d 1018, 1026 (Ohio 2022) (quoting *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188, 1192 (Ohio 1989)).  "[T]he duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case."  *Id.* (citations omitted).  "In Ohio it is well-established that liability in negligence will not lie in the absence of a special duty owed by the defendant."  *Gelbman v. Second Nat'l Bank*, 9 Ohio St. 3d 77, 78, 458 N.E.2d 1262 (Ohio 1984).

First, the Court must determine what duty, if any, Schindler owed to Plaintiff.  In this case Schindler did not own or operate the Lyndhurst Store in any capacity.  It had executed the Master Agreement with DSG to perform preventive maintenance on escalators and elevators at DSG stores, including the Lyndhurst Store.  (*See* ECF No. 45-1, PageID #1606–07, ¶¶ 5–6; *id.* at PageID #1612–35).  Generally, a contracting party like Schindler "owes no duty to a third party who is not privy to a contract." *Jones v. Action Now Pest Control*, 2010-Ohio-1543, ¶ 15 (Ohio Ct. App. 2015) (citing *Vistein v. Keeney*, 71 Ohio App. 3d 92, 593 N.E.2d 52 (Ohio 1990)).  "However, in the absence of contractual privity, a party to a contract may be liable to a third party if he performs his contractual duties in a negligent manner which would foreseeably cause the third party's injuries."  *Id.* (citing *Durham v. The Warner Elevator Mfg. Co*., 166 Ohio St. 31, 139 N.E.2d 10 (Ohio 1956)).

In *Durham v. The  Warner Elevator Mfg. Co.*, the Ohio Supreme Court specifically applied this theory of negligence liability to a service contractor as follows:

> Where one, under a written contract, undertakes to service and examine the mechanical equipment of another and make a report on the condition thereof, and the equipment is of such a nature as to make it reasonably certain that life and limb will be endangered if such work is negligently performed, he is chargeable with the duty of performing the work in a reasonably proper and efficient manner,  and if such duty is negligently or carelessly performed whereby injury occurs to a blameless person, not a party to the contract and lawfully using such equipment, such injured person has a right of action directly against the offending contractor.  Liability in such instance is not based upon any contractual relation between the person injured and the offending contractor, but upon the failure of such contractor to exercise due care in the performance of his assumed obligations.

139 N.E. 2d at 14.  Applying this theory of negligence, Schindler's duty to Plaintiff is, as a matter of law, limited in scope by the Master Agreement between Schindler and DSG.  *Heneghan v. Sears, Roebuck & Co.*, 67 Ohio App. 3d 490, 587 N.E.2d 854, 856 (1990) (citing *Durham*, 139

N.E. 2d at 14); *Meros v. Sunbelt Rentals, Inc.*, 2023-Ohio-4313, 230 N.E.3d 487, 493 (Ohio Ct. App. 2023) (collecting cases).

As stated in the Master Agreement, Schindler was responsible for: (i) performing preventive maintenance on DSG's escalators and elevators in accordance with a specific maintenance schedule; (ii) examining, lubricating, adjusting, and repairing/replacing covered components; (iii) safety testing; and (iv) providing customer friendly and responsive communication.  (ECF No. 45-1, PageID #1606–08, ¶¶ 5–9; *id.* at PageID #1613, 1628).  Thus, for Plaintiff to maintain its claim for negligence against Schindler, she would need to provide sufficient evidence that Schindler was negligent—*i.e.*, acted unreasonably—in performing the above duties; specifically, in performing preventive maintenance on the up escalator at the Lyndhurst Store.

Having reviewed the undisputed facts, and the evidence provided by both parties, the Court finds that Plaintiff has not provided sufficient evidence to establish that Schindler negligently performed its duties under the Master Agreement—particularly with respect to performing maintenance on the up escalator at the Lyndhurst Store.  The undisputed evidence establishes the following.  Schindler had performed preventive maintenance for the Lyndhurst Store, including the up escalator, according to a specific maintenance schedule from 2004/2005 until the date of the incident.  (ECF No. 45-1, PageID #1607–08, ¶¶ 6–9; ECF No. 45-3, PageID #1685–86, ¶¶ 3, 5; ECF No. 43-7, PageID #1353, ¶ 3).  The Schindler technician who regularly serviced the Lyndhurst Store for the 20 years preceding the incident recalled no unusual issues with the up escalator outside of normal wear and tear and standard preventive maintenance.  (ECF No. 45-3, PageID #1685, ¶ 4).  On April 12, 2022, three days before the incident, a State Inspector performed an annual inspection in the presence of a Schindler technician and that inspector passed the up

escalator having found no violations.  (ECF No. 43-7).  The Function Location Site History Report for the up escalator shows no issues with wires or pieces of metal sticking out of the escalator in the two years leading up to the incident.  (ECF No. 45-1, PageID #1608, ¶ 11; *id.* at PageID #1672–75).

In opposition, Plaintiff points to evidence of a wire on the escalator causing her injury, specifically: (i) photographic evidence of a puncture wound on her big toe, a puncture in her sock, and a puncture in her sandal; and (ii) the testimony of Plaintiff and Ms. Crawford of a wire sticking out of the escalator.[5]  (ECF No. 58-1, PageID #1997–98).  She argues that this evidence is sufficient to demonstrate an issue of material fact as to whether Schindler breached its duty to inspect and maintain the up escalator.  (*Id.* at PageID #1998).  The Court disagrees.  While the evidence cited by Plaintiff does create an issue of material fact as to whether there was a wire protruding from the up escalator that might have caused Plaintiff's injury, it does not sufficiently establish that Schindler was negligent in its duties to inspect and maintain the up escalator; particularly given the other evidence in the record.  Plaintiff's argument essentially amounts to: if there was a wire, then Schindler must have been negligent while performing its inspections and maintenance of the up escalator.  But Plaintiff has provided no evidence that Schindler did not perform regular preventive maintenance or that the maintenance checklist and system used by Schindler for maintaining the up escalator was deficient.

There is simply no evidence that Schindler was on notice of wires or pieces of metal sticking out of the escalator—with the regular technician recalling no such issue, the maintenance records reflecting no such issue,[6] and the up escalator passing an annual state inspection three days

---

[5] Schindler's technician and Mr. Lengyel both deny seeing a wire on the up escalator in the timeframe after the incident.  (ECF No. 17-1, PageID #503; ECF No. 45-2, PageID #1680, ¶ 14; ECF No. 43-10, PageID #1422, ¶¶ 6–7).
[6] Plaintiff argues that the up escalator had a record of mechanical problems in the months proceeding Plaintiff's injury, including calls for similar issues.  (ECF No. 58-1, PageID #2004).  First, the Court finds that the service issues denoted

11

before the incident.   Nor is there any evidence that Schindler should have been on notice of protruding wires.   Two Schindler escalator and elevator technicians, with 27 and 11 years' experience respectively, attested that they knew of no component of an escalator that would lead to a wire or piece of metal sticking out of an escalator step.  (ECF No. ECF No. 45-3, PageID #1686, ¶ 6; ECF No. 43-10, PageID #1421–22, ¶¶ 2, 7).  In an expert report for Defendants, which Plaintiff has not challenged, John Donnelly opined that:

> (1) there are no parts of an escalator that are consistent with the damage to [Plaintiff's] shoe and sock; (2) I know of no metal parts on an escalator that would cause or contribute to the damage on [Plaintiff's] shoe; (3) escalator steps are diecast aluminum construction and the steps are continuously moving with extremely tight clearances and it is impossible for a piece of metal or wire like that described by Jones to get stuck between the steps; and (4) the subject escalator met all applicable codes and standards at the time of the incident.

(ECF No. 43-12, PageID #1424–25, ¶¶ 2–4; *id.* at PageID #1426–28).  Plaintiff has provided no expert opinion or evidence in opposition.

Plaintiff alternatively argues that granting summary judgment in favor of Schindler is improper because of DSG's spoliation of any contemporaneous photographs of the escalator steps at the time of injury.  (ECF No. 58-1, PageID #1998–2003).  She contends that without the ability to examine photographic evidence of the alleged hazard: (i) it is impossible to determine whether the alleged wire was caused by Schindler's negligent performance maintenance; and (ii) granting summary judgment would create a perverse incentive for co-defendants to spoliate evidence for the benefit of another party.  (*Id.* at PageID #2002–03).  The Court finds Plaintiff's argument unpersuasive.  First, the Court already addressed the issue of spoliation.  The Court adopted the Magistrate Judge's R&R (ECF No. 60) and its finding that DSG did not intentionally spoliate the

---

in the Function Location Site History Report in the months preceding the incident are not similar in nature to an alleged protruding wire.   Second, the fact that Schindler had fixed prior mechanical issues with the up escalator does not indicate poor preventive maintenance.   And without expert evidence opining that the types of mechanical problems with the up escalator are indicative of alleged poor maintenance, the Court finds Plaintiff's argument unfounded.

contemporaneous photographs of the escalator and that adverse jury instructions were unwarranted.  (ECF No. 61).  The Court also granted Plaintiff a remedy in the form of curative instructions as to the spoliated photographs at trial.  (*Id.* at PageID #2173).  Plaintiff did not file objections to the R&R, nor did she challenge the Order adopting the R&R.

Second, the Court notes that Schindler has no fault or blame with respect to the spoliated photographs.  Schindler is also prejudiced by the missing photographs, as its own experts cannot perform an analysis of this evidence.  Finally, Plaintiff has not explained or identified what discoverable evidence it would provide at trial to establish Schindler's negligence if the Court were to deny summary judgment and allow the claims against Schindler to proceed.  Plaintiff's briefs do not cite any expert testimony or evidence to refute the expert evidence provided by Defendants; specifically, the opinion that no part of an escalator was consistent with the injury described by Plaintiff, that it was impossible for the wire described by Plaintiff to get stuck between steps, and that the up escalator was in compliance with all applicable codes and standards.  (*See* ECF No. 42-12, PageID #1424–25, ¶ 4).  Nor has she provided evidence to refute the maintenance logs or testimony of Schindler's technicians.  Without such a showing, the Court finds it inappropriate to grant sanctions against Schindler and to deny summary judgment based on the spoliated photographs.

Accordingly, the Court finds that no reasonable jury could find that Schindler performed its duties under the Master Agreement (namely, preventive maintenance and inspection of the up escalator) negligently.  Thus, the Court **GRANTS** summary judgment in favor of Schindler and **DISMISSES** all claims asserted against it.

**B.    Plaintiff's Motion for Summary Judgment – Negligence Claim against DSG**

Plaintiff argues that DSG breached its duty of care to Plaintiff because: (i) a DSG employee directed Plaintiff to use a non-operational and unsafe escalator; (ii) DSG had knowledge of the non-operational up escalator but failed to barricade it in violation of internal store policy; and (iii) sufficient time had passed to implement safety measures and warnings about the malfunctioning up escalator.  (ECF No. 39-1, PageID #1182–87).  Defendants respond that there are genuine questions of material fact as to whether: (i) DSG had sufficient knowledge of the alleged hazard; (ii) failing to barricade the non-operational escalator violated the duty of ordinary care; and (iii) the non-operational escalator was an open and obvious hazard.  (ECF No. 44, PageID #1468–74).  They also argue that a breach of internal policy does not establish a breach of duty, and there are issues of material fact as to whether DSG proximately caused Plaintiff's injury.  (*Id.* at PageID #1474–77).

As previously discussed, a negligence claim under Ohio law requires a plaintiff to demonstrate: (i) "the existence of a duty"; (ii) "a breach of that duty"; and (iii) "an injury that was proximately caused by the breach."  *Rieger*, 138 N.E.3d at 1125.  Neither party disputes that Plaintiff was a business invitee.  As defined by Ohio law, "[a] business invitee is a person who comes upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner."  *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St. 3d 312, 1996-Ohio-137, 662 N.E.2d 287, 291 (Ohio 1996) (citing *Light v. Ohio Univ.*, 28 Ohio St. 3d 66, 28 Ohio B. 165, 502 N.E.2d 611, 613 (Ohio 1986)).

Ohio law also recognizes that a landowner generally owes a business invitees a "duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger."  *Paschal v. Rite Aid Pharmacy, Inc.*, 18

Ohio St. 3d 203, 18 Ohio B. 267, 480 N.E.2d 474, 475 (Ohio 1985).    That said, a landowner/shopkeeper is not "an insurer of the customer's safety."  *Id.*  "A landowner must warn business invitees 'of latent or concealed dangers' when 'the owner knows or has reason to know of the hidden dangers.'" Snyder v. Walmart, Inc., 2022 U.S. App. LEXIS 32983, at *5 (6th Cir. 2022) (quoting *Klauss v. Marc Glassman, Inc.*, 2005-Ohio-1306, 2005 WL 678984, at *2 (Ohio Ct. App. 2005)) (alteration adopted).  That said, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious."  *Armstrong v. Best Buy Co.*, 2003-Ohio-2573, 99 Ohio St. 3d 79, 788 N.E.2d 1088, 1089 (Ohio 2003).  For a business invitee to recover for negligence under Ohio law, it is well established that they must establish either:

1. That the defendant through its officers or employees was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Holly v. Walmart Real Est. Bus. Tr.*, 262 F. Supp. 3d 532, 536 (N.D. Ohio 2017) (citing *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 49 N.E.2d 925, 928 (Ohio 1943)); *Hochstetler v. Menards*, 688 F. App'x 381, 383 (6th Cir. 2017) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476–77 (6th Cir. 2010)).

### *1.    Proximate Causation*

Addressing the third element required to establish a claim of negligence, the Court finds that it cannot grant summary judgment in favor of Plaintiff because, viewing the evidence in the light most favorable of DSG (the non-movant), there are issues of material fact as to whether DSG proximately caused Plaintiff's injury.  Notably, there is a genuine dispute of material fact as to

whether there was a wire, piece of metal, or other hazard on the up escalator that caused the injury alleged by Plaintiff.  Plaintiff provides testimony of herself and her friend, Ms. Crawford, that she stepped on a small metal wire while ascending the non-operational up escalator at the Lyndhurst Store, causing an injury to her foot.  Ms. Crawford testified that when she and Mr. Lengyel went back to the escalator a short time later, that they both saw a little wire, he tried to jiggle the wire and get it out, and he was unable remove the wire.  (ECF No. 39-1, PageID #1201).  However, in a sworn declaration and deposition testimony, Mr. Lengyel attested that he never saw a wire, spike, or foreign object on the escalator that would have caused a puncture wound to Plaintiff.  (ECF No. 45-2, PageID #1680, ¶ 14; ECF No. 17-1, PageID #502–03, 516).[7]

While there were pictures taken after the incident in the Lyndhurst Store's manager's office showing a puncture wound on Plaintiff's foot and a tear in her sock, there is no picture or video of the supposed wire/piece of metal that caused the alleged injury or other non-testimonial evidence that the injury occurred in the Lyndhurst Store.  Defendants also provide sworn declarations from two Schindler technicians with decades of experience that they know of no component or mechanism of an escalator that would lead to a wire or piece of metal sticking out of a step in the way described by Plaintiff.  (ECF No. 45-3, PageID #1686, ¶ 6; ECF No. 43-10, PageID #1422, ¶ 7).  Expert John Donnelley opined that there are no parts of an escalator that could cause the damage Plaintiff's shoe and sock and it was impossible for a piece of metal or wire to be stuck between steps in the way described by Plaintiff.  (ECF No. 43-12, PageID #1424–25, ¶ 4; *id.* at PageID #1427–28).  Plaintiff has provided no expert testimony in opposition.  Weighing the above

---

[7] The Court denies Plaintiff's request to disregard Mr. Lengyel's sworn declaration under the "sham affidavit" rule. (ECF No. 54, PageID #1805–08).  The Court addressed the issues concerning the spoliated photographs with its order adopting the Magistrate Judge's R&R.  (ECF No. 60).  Additionally, the Court has not considered the April 27th photograph or statements concerning that photograph as part of its analysis.  The Court also finds that Mr. Lengyel referring to Mr. Bruno as a "store manager" in his deposition and a "store employee" in his sworn declaration is not contradictory and does not call for the application of the sham affidavit rule.  Again, the exact role of Mr. Bruno as an employee of DSG took no part in the Court's analysis.

evidence, as well as evaluating the credibility of the potential witnesses, is a matter delegated solely to the jury.  As a result, the Court finds that there is a genuine dispute of material fact as to whether there was a wire or other sharp object on the up escalator that caused Plaintiff's injury. This alone is sufficient to deny Plaintiff's request for summary judgment.

To the extent Plaintiff argues that DSG proximately caused the injury to Plaintiff by directing her to use the up escalator, the Court finds there to be a genuine issue of material fact. Plaintiff argues that she and Ms. Crawford were "specifically directed by a store employee to use the non-operational escalator."  (ECF No. 39-1, PageID #1188).  The testimony cited by Plaintiff shows that an employee at the front of the store, when asked where a Cleveland Cavaliers gear was located, either "pointed up the escalator" or said, "Go up the escalator, to the right."  (ECF No. 16-1, PageID #202–03; ECF No. 39-1, PageID #1198–99).  This evidence does not establish that this unidentified employee knew that the up escalator was non-operational, was aware of any hazard on the escalator, and was specifically and intentionally directing Plaintiff to use a non-operational/stationary escalator.  Thus, if the employee merely suggested the usual, ordinary path to reaching the second floor, there is a question as to whether Plaintiff arriving at up escalator, seeing it was non-operational, and seeing the sign at the bottom of the escalator stating the location of an elevator, was sufficient to break the causal chain or warrant application of comparative negligence—both issues reserved for the jury to resolve.[8]  Moreover, Mr. Lengyel attested that the Lyndhurst Store, and all other two-story DSG sores, never display local team gear (*e.g.*, Cleveland Cavaliers gear) on the second floor.  (ECF No. 45-2, PageID #1678, ¶ 7).  This calls into question the credibility of Plaintiff and Ms. Crawford's testimony—another issue reserved for the jury.

---

[8] These issues are necessary to resolve should Plaintiff's theory of causation and negligence claim should ultimately rely on the employee's "directions" to use the up escalator—*e.g.*, the non-operational escalator is considered, in general, an open and obvious danger and there was insufficient knowledge of the latent wire on the escalator or passage of time to sufficiently establish negligence by DSG.

Because there are genuine issues of material fact as to causation, the Court **DENIES** summary judgment in favor of Plaintiff on the negligence claims against DSG.

### 2.    Standard of Care – Duty Owed to Plaintiff

Although Plaintiff's request for summary judgment has been denied based on there being an issue of material fact as to causation, the Court will address several other issues raised in the parties' briefing as to the standard of care.

### a.    Failure to barricade – violation of store policy/procedure

Plaintiff argues that DSG breached its duty of care to her by disregarding its own internal safety protocols to barricade non-operational escalators because such a failure falls shorts of the duty of ordinary care.  (ECF No. 39-1, PageID #1185–87).  As recognized by Plaintiff,[9] and argued by Defendants,[10] a defendant's own internal safety policies or procedures do not create a heightened or independent duty of care to business invitees, nor does a failure to comply with those internal policies procedures, by itself, establish negligence or a breach of duty.  *See Liggins v. Giant Eagle McCutcheon & Stelzer*, 2019-Ohio-1250, ¶ 22 (Ohio Ct. App. 2019) ("Ohio law is clear that internal safety guidelines do not create new duties, nor do they modify or heighten the ordinary duty of care storeowners owe their business invitees.  Further, an employee's alleged failure to comply with an internal policy does not give rise to a reasonable inference of negligence on the part of the business owner." (internal citations omitted)); *Holly v. Real Est. Bus. Tr.*, 262 F. Supp. 3d 532, 536–37 (N.D. Ohio 2017) ("[D]efendant's own procedures and policies do not *ipso facto* create the standard of care and, relatedly, that a defendant's failure to comply with its own procedures and policies  does not, standing alone, establish breach."); *see also Martin v. Giant Eagle, Inc.*, 2014-Ohio-2657, ¶31 (Ohio Ct. App. 2014) ("A violation of an internal policy does

---

[9] (ECF No. 39-1, PageID #1185).
[10] (ECF No. 44, PageID #1474).

not establish the standard of care."); *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, 993 N.E.2d 808, 821 (Ohio Ct. App. 2013) ("[A] reasonable inference of negligence does not arise simply because an employee failed to comply with a policy directive.").  That said, a jury may consider a defendant's internal policies and procedures, and the failure to adhere to them, as factors when determining whether that defendant breached a duty of ordinary care.  *Holly*, 262 F. Supp. 3d at 537 (citing *Mackey v. Kroger Co.*, No. 92-B-56, 1994 Ohio App. LEXIS 3673, at *6 (Ohio Ct. App. Aug. 22, 1994)); *E.B. v. Home Depot, Inc.*, No. 1:23 CV 98, 2024 U.S. Dist. LEXIS 112084, at *12 (N.D. Ohio June 26, 2024) ("While a defendant's internal safety policies do not create a legal duty where one does not already exist, such policies may be considered by a jury as a factor, but not the only factor, in determining whether or not ordinary care was satisfied." (citations omitted)).

Here, there remains a genuine issue of material fact as to whether DSG breached a duty of ordinary care to Plaintiff when its employees failed to barricade the non-operational up escalator.  Plaintiff argues that DSG's policy of barricading non-operational escalators "represents basic common sense and the essence of ordinary care" and also reflects "industry knowledge of risks and appropriate safeguards."  (ECF No. 39-1, PageID #1186).  But Plaintiff provides no citation to authority or evidence to support these propositions.  Nor does she provide authority that a failure to barricade a non-operational escalator constitutes a breach of duty to a business invitee as a matter of law.  Thus, for purposes of summary judgment, Plaintiff has not established that DSG breached a duty of care to Plaintiff merely by its employees failing to comply with an internal policy to barricade non-operational escalators.

b.      Open and obvious doctrine

Both parties provide arguments as to why the open and obvious doctrine either does or does not apply.  To the extent Plaintiff premises her theory of negligence on the non-operational escalator being a hazardous condition in general, the Court agrees with Defendants that there are issues of material fact as to whether the non-operational status of the up escalator was an open and obvious hazard.  Plaintiff has provided no authority that a non-operational escalator is inherently dangerous or that it is not subject to the open and obvious doctrine—such that there is a duty under Ohio law to barricade a non-operational escalator or adequately warn business invitees.  This is especially salient in a case like this in which the alleged injury does not appear to have resulted from the mere non-operational status of the escalator like tripping due to uneven steps.[11]  As previously discussed, there are also issues of material fact as to whether Plaintiff was specifically directed to use the non-operational escalator and whether the circumstances and condition of the up escalator on the date of the incident constituted an open and obvious hazard (given the elevator sign, the apparent non-operational status of the escalator, Plaintiff recognizing the up escalator was non-operational, and the condition of the escalator in general).

If the non-operational up escalator were ultimately considered an open and obvious hazard with no general duty to warn, Plaintiff also argues that the alleged wire/piece of metal constitutes a latent defect that is not subject to the open and obvious doctrine, and Defendants provide no argument in opposition.  (ECF No. 39-1, PageID #1187–88; ECF No. 54, PageID #1814–15).  The

---

[11] There is a split among authorities as to whether a stationary/non-operational escalator is a dangerous condition. *Compare Kilgore v. Carson Pirie Holdings, Inc.*, 205 F. App'x 367, 375 (6th Cir. 2006); *with Ramos v. Sears*, 2010 U.S. Dist. LEXIS 95570, at *15–17 (S.D.N.Y. Sept. 13, 2010) ("As for whether the stationary escalator in question could have constituted a hazard, however, New York precedent that is squarely on point compels the conclusion that, HN9 in the absence of any defect, debris or other obstruction, the escalator, even if not running, cannot be found to have been a dangerous condition that posed a foreseeable risk of injury."); Schurr v. Port Auth. of New York and New Jersey, 307 A.D.2d 837, 763 N.Y.S.2d 304 (N.Y. App. Div. 2003); *Schurr v. Port Auth.*, 307 A.D.2d 837, 763 N.Y.S.2d 304, 304–05 (N.Y. App. Div. 2003); *and Auguste v. Montgomery Ward & Co.*, 257 Ill. App. 3d 865, 195 Ill. Dec. 950, 629 N.E.2d 535, 539 (Ill. App. Ct. 1993).

Court agrees with Plaintiff. *See Potts v. David L. Smith Constr. Co.*, 23 Ohio App. 2d 144, 261 N.E.2d 176, 179 (Ohio Ct. App. 1970) ("[A] latent peril is a danger which is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination."); *Isaacs v. Meijer, Inc.*, 2006-Ohio-1439, ¶ 14 (Ohio Ct. App. 2006) ("A latent defect is 'hidden, concealed, and not discoverable by ordinary inspection.'"). In that case, Plaintiff would need to establish that DSG was either responsible for the wire, had actual knowledge of the wire, or a sufficient length of time had passed such that DSG should have warned or removed the wire before the injury occurred. *See Holly*, 262 F. Supp. 3d at 536. These are issues of material fact, and Plaintiff has not sufficiently established any of these possibilities at this stage of the proceeding. Based on the above, the Court would also deny Plaintiff's request for summary judgment based on the remaining issues of material fact concerning the duty owed Plaintiff and whether a breach occurred.

### C. Defendants' Motion for Summary Judgment – Punitive Damages against DSG

Defendants argue that DSG is entitled to summary judgment in its favor on Plaintiff's punitive damages claim because the facts of this case do not rise to the level necessary under Ohio law to support such an award, as there is no evidence of a "great possibility of harm" caused by DSG's conduct, DSG having knowledge of the alleged hazard, or conscious wronging by DSG. (ECF No. 43-1, PageID #1324–25). Plaintiff responds that there is sufficient evidence for a jury to find that DSG management knew the escalator was broken and hazardous and made a conscious, reckless choice to ignore known safety rules. (ECF No. 58-1, PageID #2004–05). Defendants reply that there is no evidence that: (i) DSG knew the escalator was broken or hazardous; (ii) the DSG employee who alleged told Plaintiff to use the escalator even knew it had stopped working;

or (iii) DSG employees acted with callous disregard to the rights and safety of others.  (*Id.* at PageID #2120–21).

"Under Ohio law, punitive damages may be recovered only upon a showing of 'actual malice.'"  *Mengelkamp v. Lake Metro. Hous. Auth.*, 549 F. App'x 323, 333 (6th Cir. 2013) (citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558, 1994 Ohio 461, 644 N.E.2d 397, 402 (1994)).  Actual malice is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St. 3d 334, 512 N.E.2d 1174, 1176 (Ohio 1987) ("A possibility or even probability will not be enough as that requirement would place the act in the realm of negligence.").  "The plaintiff bears the burden to establish entitlement to punitive damages by clear and convincing evidence."  *Id.* (citing Ohio Rev. Code § 2315.21(D)(4)).

Plaintiff does not argue that there was hatred or ill will; she only argues for punitive damages on a theory of conscious disregard for the safety of others.  (ECF No. 58-1, PageID #2005–06).  In Ohio, "[p]unitive damages are only available when *conscious wrongdoing* is involved."  *Alleman v. YRC*, 787 F. Supp. 2d 679, 684 (N.D. Ohio 2011) (citing *Preston*, 512 N.E.2d at 1176) (emphasis added). Such conscious wrongdoing requires that a defendant "possess knowledge of the harm that might be caused by his behavior."  *Id.* (quoting *Preston*, 512 N.E.2d at 1176).  Thus, mere recklessness, carelessness, and ignorance are insufficient to support an award of punitive damages.  *See id.*  "[B]efore submitting the evidence to a jury, a court must determine (1) if reasonable minds can differ as to whether the party was aware that his act had a great probability of causing substantial harm, and (2) whether sufficient evidence is presented that the party consciously disregarded the injured party's rights or safety."  *Id.*

The Court finds that Plaintiff has not provided sufficient evidence to permit her claim of punitive damages to survive the summary judgment phase.  Plaintiff points to the following as evidence of actual malice: (i) Mr. Lengyel's knowledge that the up escalator was broken and hazardous; (ii) the up escalator not being barricaded despite store policy; and (iii) Plaintiff being directed to use the non-operational up escalator by another DSG employee.  (ECF No. 58-1, PageID #2005).  First, Plaintiff has misstated/misconstrued some of the above evidence.  There is no evidence that the DSG employee who allegedly directed Plaintiff to use the escalator knew it was non-operational or hazardous; the evidence simply reflects that this employee directed Plaintiff to use the up escalator to find Cleveland Cavaliers gear.[12]  (ECF No. 16-1, PageID #202–03).

 Record evidence also reflects that Mr. Lengyel was aware that the up escalator had become non-operational around 4:30 p.m. on the day of the incident and another DSG employee (Nicholas Bruno) called Schindler for service. (ECF No. 45-2, PageID #1679, ¶¶ 9–11; ECF No. 45-1, PageID #1608, ¶ 12; *id.* at PageID #1675).  That said, no evidence suggests that Mr. Lengyel knew that the up escalator had a wire or sharp metal object lodged in one of the steps or that he knew the escalator was hazardous.  In fact, the history report indicates that Mr. Burno simply stated that the up escalator had stopped.  (ECF No. 45-1, PageID #1675).  Thus, no evidence establishes that DSG and its agents knew of the specific hazard/danger alleged by Plaintiff.

Even when viewing the evidence in a light most favorable to Plaintiff, the conduct argued by Plaintiff does not rise to the level of callousness and conscious disregard required to award punitive damages under Ohio law.  DSG employees knowing that the escalator was non-operational, and had prior unrelated service issues, and failing to barricade the non-operational

---

[12] As noted previously, Defendants contest this evidence by pointing to testimony that Cavs gear has never been located on the second floor of the Lyndhurst Store or any other DSG store.  (ECF No. 45-2, PageID #1678, ¶ 7)

escalator pursuant to store procedures at best demonstrates recklessness[13]—but this is insufficient to establish punitive damages. The Ohio Supreme Court explained the high standard required for punitive damages as follows:

> [A]ctual malice requires consciousness of the near certainty (or otherwise stated "great probability") that substantial harm will be caused by the tortious behavior.  Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages.  Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously.

*Motorists Mut. Inc. Co. v. Said*, 63 Ohio St. 3d 690, 1992 Ohio 94, 590 N.E.2d 1228, 1234 (Ohio 1992), *overruled on other grounds by*, *Zoppo*, 644 N.E.2d 397.  Here, there is no evidence to suggest that any DSG employee or agent had knowledge of a *great* probability of a risk of *substantial* harm to Plaintiff.

The record evidence, and even Plaintiff's own allegations, do not demonstrate "conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable"; *i.e.*, the requisite standard for conscious disregard.  *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St. 3d 470, 575 N.E.2d 416, 419 (Ohio 1991); *Preston*, 512 N.E.2d at 1176.  The evidence before the Court does not clear the high bar of establishing liability for punitive damages under Ohio law, which is "reserved for particularly egregious cases involving deliberate malice or conscious, blatant wrongdoing. . . ."  *Spalding v. Coulson*, NOS. 70524, 70538, 1998 Ohio App. LEXIS 4105, at *52–53 (Ohio Ct. App. Sep. 3, 1998).

Because no evidence suggests that DSG engaged in actual malice or conscious wrongdoing, the Court finds that there is no issue of material fact as to the issue of punitive

---

[13] The Court has doubts that the failure to barricade even rises to the level of recklessness.  As discussed above, a company's internal safety policies and procedures do not create an independent duty of care or a heightened duty of care, and an employee's failure to abide by them does not necessarily rise to the level of mere negligence, let alone recklessness.

damages.  Accordingly, the Court **GRANTS** summary judgment in DSG's favor as to the issue of punitive damages and **DISMISSES** Plaintiff's claims for punitive damages against it.[14]

## V.     CONCLUSION

For the foregoing reasons, Plaintiff Tiffiney Jones's motion for partial summary judgment (ECF No. 39) is **DENIED**, while Defendant's Motion for Summary Judgment (ECF No. 43) is **GRANTED**.  Summary judgment is entered in Defendant Schindler Elevator Corporation's favor on all claims against it.  Summary judgment is also entered in Defendant Dick's Sporting Goods, Inc.'s favor with respect to Plaintiff's claim/request for punitive damages.  Plaintiff's claim of negligence against Defendant Dick's Sporting Goods Inc. remains pending.

**IT IS SO ORDERED.**

Date: January 26, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**

---

[14] Although the Court has dismissed the negligence claims against Schindler, the Court notes that if the negligence claims against it had survived summary judgment, it would have dismissed any claim for punitive damages against Schindler for the same reasons the Court has dismissed the punitive claims against DSG.  Mainly, there is no evidence of actual malice, ill intent, callous disregard, or conscious wrongdoing on the part of Schindler.