**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFINEY JONES, | ) | CASE NO. 1:24-cv-619 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| DICK'S SPORTING GOODS, INC., *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendant Dick's Sporting Goods, Inc.'s ("DSG") motion to exclude testimony of expert witness, Richard L. Zimmerman ("Motion to Exclude"). (ECF No. 69). Plaintiff Tiffiney Jones ("Plaintiff") filed an opposition, (ECF Nos. 70, 70-1), and DSG filed a reply in support, (ECF No. 71).  For the reasons stated below, the Court **GRANTS** the Motion to Exclude.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

DSG operates a retail location in Lyndhurst, Ohio (the "Lyndhurst Store").  (ECF No. 1-1, PageID #11).  On April 15, 2022, a manager of DSG's Lyndhurst store location, Michael Lengyel, learned that the lone up-down escalator in the Lyndhurst Store had stopped working.  (ECF No. 43-5, PageID #1335; ECF No. 45-3, PageID #1685, ¶3; ECF No. 45-2, PageID #1679, ¶ 10). An employee reported the issue to Schindler Elevator Corporation ("Schindler") and requested service maintenance.  (ECF No. 45-1, PageID #1608, ¶ 12; ECF No. 45-2, PageID #1679, ¶ 11; ECF No. 45-2, PageID #1675).  Though the escalator remained non-operational and stationery, it was not barricaded.  (ECF No. 16-1, PageID #203–04; ECF No. 45-2, PageID #1679, ¶ 11).

1

Shortly after the escalator ceased operation, Plaintiff entered the Lyndhurst Store with Gale Crawford.  (ECF No. 16-1; PageID #194, 241).  Plaintiff and Crawford approached the escalator, noticed it was non-operational, and began to climb the stationary escalator.  (ECF No. 16-1, PageID #203–11; ECF No. 39-2, PageID #1208; ECF No. 43-9, PageID #1414).  While ascending, Plaintiff contends that she felt a sharp pain in her toe and had stepped on a metal wire located on the escalator steps, which punctured her sandal and sock.  (ECF No. 16-1, PageID #160, 211–12, 217, 219).  Later, when the Schindler technician arrived, he did not find a wire or any other piece of metal sticking out of the escalator and he determined that the escalator was non-operational because the carriage switch was sticking, which he repaired before leaving the Lyndhurst Store. (ECF No. 43-10, PageID #1422, ¶¶ 5–6, 8–9).

On March 31, 2024, Plaintiff filed a complaint in the Cuyahoga County Court of Common Pleas against both Schindler and DSG.  (ECF No. 1-1, PageID #9–18).  The complaint asserts claims of negligence against Defendants based on the alleged injury, and requests for punitive damages and compensatory damages.  (*Id.* at PageID #12–18).  On April 5, 2024, Defendants removed this action to the Northern District of Ohio under 28 U.S.C. §§ 1332 and 1446(a), invoking the Court's diversity jurisdiction.  (ECF No. 1).  On December 6, 2024, Plaintiff filed a Designation of Experts and Disclosure of Expert Testimony and disclosed one liability expert: Richard Zimmerman, R.A. (a registered architect).  (ECF No. 23, PageID #719).

On July 22, 2025, Magistrate Judge Reuben Sheperd issued a report and recommendation ("R&R") addressing a discovery dispute and a motion for sanctions (ECF No. 51) regarding missing electronically stored information ("ESI").  (ECF No. 60).  Magistrate Judge Sheperd found that DSG did not act with the intent to deprive Plaintiff of the ESI in question (escalator photos taken on the date of the incident), and recommended curative instructions to the jury at trial under

2

Rule 26(g).[1]  (*Id.* at PageID #2162–70).  After no party filed an objection, the Court entered an order adopting the R&R and granting Plaintiff's motion for sanctions, to the extent that the Court would provide curative instructions about the escalator photos pursuant to Rule 26(g) at trial.  (ECF No. 61).

On April 2, 2025, Plaintiff moved for partial summary judgment, seeking summary judgment solely as to the negligence claims asserted against DSG.  (ECF Nos. 39, 39-1).  Defendants likewise moved for summary judgment on June 2, 2025, wherein they sought summary judgment on: (i) all claims asserted against Schindler; and (ii) only the claim for punitive damages against DSG.  (ECF Nos. 43, 43-1).  On January 26, 2026, the Court issued a Memorandum Opinion and Order (1) granting summary judgment in favor of Schindler, dismissing all claims against it, (2) granting summary judgment for DSG as to the punitive damages claims against it, and (3) denying summary judgment for Plaintiff on the negligence claims.  (ECF No. 62, PageID #2223).  On January 28, 2026, the Court set a Final Pretrial Conference date of June 2, 2026, and a Jury Trial date of June 8, 2026.

DSG moved to exclude Mr. Zimmerman's expert witness testimony on February 5, 2026.  (ECF No. 67).  Plaintiff filed a response in opposition, (ECF Nos. 70, 70-1), and DSG a reply in support.  (ECF No. 71).

## II.    LEGAL STANADARD

In determining whether to admit or deny expert testimony, district courts serve a "gatekeeping role" to "ensure that any and all scientific testimony or evidence admitted is not only

---

[1] The R&R recommended the following instructions: "During the depositions, the parties testifying were presented five photos of the scene as if they were contemporaneous and all taken on April 15, 2022.  The two photos of the subject escalator and step were taken on April 27, 2022, 12 days after the alleged injury was suffered, and do not depict the condition of the escalator or step at the time of the alleged injury. DSG has not produced any contemporaneous photos of the escalator or step in question."  (ECF No. 60, PageID #2170).

3

relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  This gatekeeping function applies to scientific testimony and other expert testimony involving technical or specialized knowledge.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

A motion to exclude expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  Rule 702 permits expert witness testimony if the party offering the testimony demonstrates that: (1) the expert has "scientific, technical, or other specialized knowledge" to assist the trier of fact in understanding or determining a legal fact; (2) the testimony is "based on sufficient facts or data"; (3) the testimony is a "product of reliable principles and methods"; and, (4) the opinion is a "reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

This inquiry by the courts is a flexible one, focused on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 580.  Courts may consider whether the technique or theory in question have: (1) been tested; (2) been subjected to peer review and publication; (3) a known or potential error rate and the existence and maintenance of standards controlling their operation; and (4) attracted widespread acceptance with a relevant scientific community. *Id*.

## III.   ANALYSIS

DSG contends that Mr. Zimmerman's expert testimony is inadmissible on three grounds: (1) Mr. Zimmerman is not qualified to give expert testimony on the issues he intends to address; (2) Mr. Zimmerman did not conduct reliable research based on sufficient facts or data to support his conclusions; and (3) Mr. Zimmerman's opinion will not assist the trier of fact in understanding the legal issues here.  (ECF No. 69, PageID #2349–59).  Plaintiff opposes this, asserting that all

4

requirements for admissible expert testimony are satisfied.  (ECF No. 70-1).  After review, the Court agrees with DSG.

### A.    Mr. Zimmerman is not Qualified to Give Expert Testimony

DSG argues that Mr. Zimmerman's education and experience demonstrate that he is a qualified architect, but an expert's status as a qualified architect does not necessarily mean that he can testify on the "retail maintenance of escalators, which is the issue in this case."  (ECF No. 69, PageID #2350–51).  DSG asserts that Mr. Zimmerman's conclusions that DSG violated the Ohio Revised Code, Ohio Building Code, Elevator Code, and Escalator Code cannot be made without knowledge of the retail standards for maintaining escalators.  (ECF No. 71, PageID #2785).  Mr. Zimmerman does not possess this knowledge, DSG contends, because his prior escalator experience focused primarily on escalator positioning in a commercial building, not safety, maintenance, or structural integrity.  (ECF No. 69, PageID #2351, 2786; ECF No. 71, PageID #2785).  DSG therefore concludes that Mr. Zimmerman lacks specialized knowledge to opine on escalator safety and maintenance, and his offered testimony is outside the scope of his qualifications and experiences. (ECF No. 69, PageID #2350–52).

Plaintiff responds that Mr. Zimmerman's education, architecture license, and commercial project experience qualify him to testify on DSG's negligence in maintaining the escalator.  (ECF No. 70-1, PageID #2448, 2453).  Specifically, Plaintiff contends that Mr. Zimmerman's architectural experience involved examining compliance with building codes to ensure public safety in commercial spaces, which is relevant.  (*Id.* at  PageID #2459).  Plaintiff also highlights Mr. Zimmerman's experience in designing structures to accommodate escalators, determining escalator configurations to accommodate pedestrian movement patterns, and reviewing escalator

service agreements.  (*Id.* at PageID #2453–54).  These experiences, Plaintiff asserts, provide Mr. Zimmerman with sufficient experience to provide an expert opinion.  (*Id.*).

To qualify as an expert witness under Rule 702, a witness must establish his expertise through his "knowledge, skill, experience, training, or education."  *Travelers Prop. Cas. Ins. Co. v. R-Tek Insulation, Inc.*, 673 F. Supp. 3d 879, 884 (N.D. Ohio 2023).  The expert's proffered qualifications must "match up with the subject matter about which [he] is to testify."  *Elswick v. Nichols* 144 F. Supp. 2d 758, 766 (E.D. Ky. 2001) (concluding that the proposed expert witness was unqualified to testify because the subject matter was outside the scope of her qualifications). To better illustrate this principle: "an aeronautical engineer could testify about how bees fly based on his education and training in flight principles, but that same engineer could not testify about whether bees always take off into the wind because his trainings in aeronautics would not qualify him to answer that question."  *Id*.  Likewise, a beekeeper could not "testify about how planes fly because he has no training or expertise in aeronautics."  *Id*.  As another example, the court in *Travelers* found that the expert witness was unqualified to offer an expert opinion because he lacked specific degrees, trainings, or certifications in the subject area.  673 F. Supp. 3d at 886.  The court explained that the expert's trainings relative to canister lights and their fire dangers near insulation were insufficient for him to opine on the electrical systems of the canister light at issue. *Id.*  Put simply, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a *specific question*."  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (emphasis added).

The Court agrees with DSG and finds that Mr. Zimmerman is not qualified to testify on commercial escalator maintenance and safety.  Mr. Zimmerman's qualifications are related to his status as a registered architect and his experience with Ohio Codes, retail locations of escalators,

6

and pedestrian traffic flow.  (ECF No. 23, PageID #719–20; ECF No. 69, PageID #2350–51).  Like the plaintiffs in *Travelers* and *Elswick*, Mr. Zimmerman is attempting to connect his *abstract* education and experiences to opine on *specific* questions of escalator safety and functionality.  His experiences as an architect do not provide a foundation for specialized knowledge on the safety, maintenance, and structural integrity of retail escalators.  So, without technical or specialized knowledge of the appropriate and relevant standards to maintain escalators, Mr. Zimmerman is unqualified to opine on DSG's adherence to the standard of care to maintain the escalator.  Despite Mr. Zimmerman's lack of qualifications to testify on escalator safety and maintenance, the Court will provide an analysis on the remaining expert testimony requirements.

### B. Mr. Zimmerman's Conclusions Are not a Product of Reliable Methods

DSG argues that rather than using reliable methods to support his conclusions, Mr. Zimmerman's testimony is based on solely on speculation and his own *ipse dixit*.[2]  (ECF No. 71, PageID #2788, 2790).  DSG contends that Mr. Zimmerman's failure to inspect the Lyndhurst Store, examine the escalator, or test Plaintiff's footwear results in untested and unsupported conclusions.  (ECF No. 69, PageID #2353, 57–58).  Rather than conduct analyses or testing, DSG argues, Mr. Zimmerman merely relies on his own speculation of the events that occurred, resulting in conclusions based on unreliable methods.  (ECF No. 69, PageID #2354–55).

Plaintiff responds that Mr. Zimmerman's expert opinion is reliable because it is based on a substantial body of evidence, relevant codes, and a generally accepted methodology.  (ECF No. 70-1, PageID #2462–63).  Specifically, Plaintiff argues that Mr. Zimmerman's three-step methodology is "common to all code-compliance experts," and consists of: (1) examining the factual basis; (2) identifying the controlling safety standards in the Ohio Revised Code; and

---

[2] "'*Ipse dixit*' means a 'bare assertion resting on the authority of an individual.'"  *United States v. Barnes*, 295 F.3d 1354, 1362 (D.C. Cir. 2002) (quoting Black's Law Dictionary 961 (4th ed. 1968)).

(3) applying the standards to the facts. (ECF No. 70-1, PageID #2461–63). Plaintiff further argues that the result of this procedure is a reliable expert opinion attesting to the following: (1) there was a sharp object reported on the escalator; (2) the sharp object is a hazard under the Code; (3) this means that the premises were not maintained in a safe condition under the Code; and (4) DSG is negligent. (ECF No. 70-1, PageID #2463).

Beyond qualification requirements, Rule 702 also mandates that expert witness testimony is based on sufficient facts and data, is the product of reliable principles and methods, and is reliably applied to the facts of the case. Fed. R. Evid. 702. To accomplish this, courts should evaluate whether the expert opinion is based on a reliable foundation instead of unsupported speculation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). To guide this inquiry, courts examine whether the expert's technique was tested, subjected to peer review, published, subjected to standard error rates, and is generally accepted in the scientific community. *Id*. at 529.

While evaluating these factors, courts should look out for "red flags" cautioning against certifying an expert witness's opinion, such as a "reliance on 'anecdotal evidence, improper extrapolation, failure to consider other possible causes, and . . . lack of testing.'" *Baker v. Blackhawk Mining, LLC*, 141 F.4th 760, 667 (6th Cir. 2025). Expert opinions that are not based on site-specific data or a generally accepted modeling but are based on anecdotal evidence with improper extrapolations do not comply with Rule 702 requirements. *Id*.; *see also Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 957–58 (E.D. Mich. 2018) (excluding expert testimony because the witness never examined, tested, or inspected the system at issue, but merely reviewed documents and manuals and opined using his own *ipse dixit*).

8

The Court agrees with DSG and finds that Mr. Zimmerman's testimony is not based on reliable procedures.  Mr. Zimmerman's three-step methodology was not tested, fails to go beyond mere speculation, and relies mostly on his own *ipse dixit*.  Mr. Zimmerman's conclusions are not based on site-specific data and tested theories.  Instead, they are founded on the review of documents and manuals to arrive at a speculative conclusion.

Mr. Zimmerman's three step-methodology is not based on reliable methods, as it does not include any testing, modeling, or inspection.  In the methodology's first step, Mr. Zimmerman conducted a fact-finding inquiry by reading the incident report, depositions, and DSG's internal policies.  (ECF No. 70-1, PageID #2454–55).  Mr. Zimmerman also reviewed photographs and video surveillance.  *Id*.  Notably absent from this factual basis examination are visits to the Lyndhurst Store, inspections of the disputed escalator, modeling, or testing of the escalator.  In his second step, Mr. Zimmerman reviewed and identified relevant safety standards and provisions of the Ohio Code, (*id*. at PageID #2461–62), which required no data collection, testing, or analysis.  Finally, the last step in Mr. Zimmerman's methodology simply applied the facts established in the first step to the various Code provisions identified in the second step.  (*Id*. at PageID #2463).  From this application, Mr. Zimmerman arrives at the conclusion that DSG failed to maintain a safe premises because Plaintiff attests that there was a sharp object on the escalator.  (ECF No. 70-1, PageID #2462).  This is a significant analytical jump for Zimmerman to make, and he does not stick the landing.

The presence of an analytical gap his methodology warrants the conclusion that Mr. Zimmerman's opinion relies primarily on his own *ipse dixit*.  Aside from gathering facts and identifying relevant Code provisions, Mr. Zimmerman fails to provide a basis for his conclusions that address where the sharp object was located on the escalator, if the object was caused by DSG's

malfeasance, and whether the sharp object caused Plaintiff's injuries.  Contrary to Plaintiff's contentions, Mr. Zimmerman's expert testimony cannot simply consist of restating a cyclical logic pattern of "DSG violated the Code, Plaintiff was injured, so Defendant is liable."

Despite Plaintiff's claims to the contrary, Mr. Zimmerman's insufficient and unreliable methodology would not be remedied by the production of non-existent photographic evidence. The photos Plaintiff references are no longer available, (ECF No. 60, PageID #2162–70), and, even if they were, they would not save Mr. Zimmerman's insufficient and unreliable procedures. Indeed, Mr. Zimmerman's methodology would remain deficient, as he has not conducted reliable analyses or data collection to support his conclusions.  Without further investigation or data collection, Mr. Zimmerman's three-step methodology falls short of satisfying the reliability requirement for expert witness testimony.

### C.  Mr. Zimmerman's Opinions Will Not Assist the Trier of Fact

The final requirement of Rule 702 is that the expert witness's testimony assist the trier of fact in determining a fact in issue.  Fed. R. Evid. 702.  Generally, an expert's testimony will not assist the trier of fact when it is unhelpful, or when the "jury has no need for [the] opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic.'" *Raimey v. City of Niles* 676 F. Supp. 3d 547, 560 (N.D. Ohio 2022) (quoting *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012)).  Unhelpful expert testimony consists of minimal application of specialized knowledge or analysis and arrives at conclusions that jurors could reach themselves.  *Grover v. BMW of N.A., LLC*, No. 1:19-cv-12, 2022 U.S. Dist. LEXIS 12685, at *12–14 (N.D. Ohio Jan. 24, 2022) (concluding that the expert's opinions were not a product of technical knowledge and expertise, but a product of his own gloss on the contents of materials that a jury may read for itself and reach its own conclusions based on common sense and

experience).  If the jury were to accept unhelpful witness testimony, it could result in the jury "unnecessarily [deferring] to the judgment of a highly credentialed expert, when in fact the law considers lay jurors just as capable as [experts] to decide whether evidence establishes some fact." *Raimey*, 676 F. Supp. 3d at 560.  Helpful testimony, on the other hand, helps the trier of fact understand complex legal issues by providing calculations and testimony explaining calculations, a standard methodology.  *Innovation Ventures, L.L.C.*, *v. Custom Nutrition Laboratories, L.L.C.*, 520 F. Supp. 3d 872, 879 (E.D. Mich. 2021) (concluding that the expert testimony would help the jurors understand complex damages calculations because it explained the economic impact of the defendant's breach of contract on the plaintiff's profit margins).

DSG contends Zimmerman's testimony contains no new perspectives to assist the jury because his testimony was based on a simple identification of relevant code language and application to readily available documents, which the jury could do themselves.  (ECF No. 71, PageID #2791–92).  DSG argues that Mr. Zimmerman merely connects evidence in a way that counsel could do in closing statements.  (ECF No. 71, PageID #2792).  Plaintiff responds that Mr. Zimmerman's testimony will assist the jury in understanding the complex technical and professional safety standards required under the Ohio Code because "a jury cannot be expected to know the Ohio building code, the ASME A17.1 code, or the Codified ordinances of the City of Lyndhurst require."  (ECF No. 70-1, PageID #2464).  Such technical standards, Plaintiff argues, go beyond the knowledge of lay jurors and therefore expert testimony is necessary to understand them. (ECF No. 70-1, PageID #2464).

Consistent with the above analysis, the Court finds that Mr. Zimmerman's testimony would not assist the trier of fact in resolving this litigation.  Mr. Zimmerman's methodology consists of factual findings, statutory identification, and connection between the two.  This is not such a

11

nuanced procedure that a jury could not do the same.  Mr. Zimmerman offers no special technical knowledge or analysis to conclude that DSG's failure to maintain a safe premises caused Plaintiff's injuries.  (ECF No. 69-3, PageID #2378).  It is well within the abilities of jurors to review documents, read the relevant Code, and determine DSG's liability, if any.  Having identified Mr. Zimmerman's testimony as unhelpful to the factfinder, it should therefore be excluded to preserve the jurors' role in determining issues of fact in this matter.

In summation, because Mr. Zimmerman is unqualified to testify on escalator maintenance and offered unreliable methodologies to support testimony that will not assist a trier of fact, his testimony should be excluded under Rule 702.  Accordingly, the Court will grant DSG's motion and exclude the testimony of Mr. Zimmerman.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** DSG's motion to exclude testimony of expert witness, Richard L. Zimmerman (ECF No. 69).

**IT IS SO ORDERED.**

Date: April 7, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**